## Case No. 18,092.

### WRIGHT v. SCOTT (two cases).

[4 Wash. C. C. 16.] [1]

Circuit Court, D. New Jersey. April Term, 1820.

CONSTRUCTION OF WILL — ESTATE TAIL — STATUTE OF LIMITATIONS.

1. P. F. being seised of 1705 acres of land, devised the same as follows: "Unto my well beloved and only daughter, E. F. alias W. and her husband J. W. all the remaining part of my estate, not sold in my life time, both real and personal. to them, their heirs begotten of their bodies, or assigns, for ever; or for want of such heirs or assigns, then to the heirs begotten by, or either of them, and to their assigns for ever; all which estate is given as a portion to my dear and only daughter aforementioned." The will clearly intended to give, and does give to J. W. and wife, an estate tail; and in the event of their death without issue, then it was given to the heirs of the body of the survivor.

2. Construction of the act of limitations of New Jersey, passed in 1799 (section 10).

[Cited in Croxall v. Sherrerd, 5 Wall. (72 U. S.) 268.]

[3. Cited in Pritchard v. Spencer, 2 Ind. 486, to the point that the legislature may enact retrospective limitation laws, where they do not deprive parties of a reasonable time for prosecuting their claims before being barred.]

These causes came before the court. upon the following case agreed. Peter Fretwell, being in his life time and at the time of his death, seised of a tract of land containing 1705 acres, including the premises in question, by his last will bearing date in January, 1718, devised the same as follows: "Unto my well beloved and only daughter Elizabeth Fretwell, alias Wright, and to her husband Jonathan Wright, all the remaining part of my estate, not sold in my life time, both real and personal, to them, their heirs begotten of their bodies, or assigns for ever, or for want of such heirs or assigns, then to the heirs begotten by, or of either of them, and to their assigns for ever; all which estate is given as a portion to my dear and only daughter aforementioned." After the testator's death, Wright and his wife entered upon. and were possessed of the premises so devised. They had issue. Fretwell, their eldest son, besides other children; and on the 31st of August, 1742, the said Jonathan Wright, who survived his wife. died. Fretwell Wright had several children, lawful issue, some of whom survived him; but his eldest son, Peter, died in the life time of his father, having several children, of whom Fretwell, lessor of the plaintiff, was his eldest. Fretwell, the father, died on the 29th of December, 1797. On the 5th of August, 1721. Jonathan Wright, and Elizabeth his wife. being seised and possessed. as abovementioned, of the aforesaid 1705 acres of land, conveyed the same to

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Joseph Reckless in fee simple, by a deed of bargain and sale; and on the 19th of the same month and year, Reckless, by a like deed, conveyed the same land to the said Jonathan Wright in fee simple. Jonathan Wright being seised of the above estate, by deed of bargain and sale dated the 6th of May, 1741, conveyed 225 acres, part thereof, to Henry Scott, who entered on, and retained possession of the same to the time of his death. Jonathan Wright, by his will, dated the 11th of August, 1742, devised 700 acres, other part of the aforesaid 1705 acres, to his two sons Jonathan and Ebenezer in fee, as tenants in common. After his death, his said sons, the said devisees, entered upon the said 700 acres of land; made partition of the same between them, and afterwards, the said Jonathan the second, by deed of bargain and sale, bearing date the 2d of February, 1754, conveyed to the aforesaid Henry Scott, in fee simple, 125 acres of the said 700 acres, so held by him in severalty, other part of the premises in dispute in this case; and in the other ejectment against Abraham Scott, now also for judgment. On the 29th of August, 1743, the said Fretwell Wright, eldest son of the aforesaid Jonathan Wright, executed an instrument under his hand and seal, reciting that his father, in his life time, and his executors since his death, by virtue of his will, had sold lands which he had derived under the will of Peter Fretwell, for confirming the title of all such purchasers, as well as of the devisees claiming under the will of his said father, and for divers good causes and considerations, he releases unto all and every such purchaser and purchasers, and to his brothers and sisters claiming as devisees aforesaid, and to their heirs respectively, all such right, title, interest and estate, as he the said Fretwell had, or ought to have in and to the said premises so sold and conveyed. This deed was afterwards acknowledged and duly recorded.

Henry Scott being seised at the time of his death, as well as from the times when the two deeds aforesaid were made to him, of the lands therein mentioned, made his will, dated the 17th of November, 1773, whereby he devised the said lands to his two sons, Jonathan and Abraham, (defendants in these actions) in fee, equally to be divided; and died. on or before the 26th of November, 1773. Abraham and Jonathan Scott entered upon the land after the death of their father, made partition of the same, and have continued to hold possession of their respective parts ever since. Fretwell, the son of Jonathan Wright the elder, was twenty-nine years of age at the death of his father, and resided in this state till his own death. He died intestate, leaving issue six children, besides Fretwell Wright his grandson, then aged twenty-one years, the lessor of the plaintiff, who was the son of Peter F. Wright, the eldest son of the said Fretwell Wright the intestate, who died in his father's life time. This ejectment

was commenced on the 26th of September, 1816. It is then agreed that if the opinion of the court upon the above case, should be in favour of the lessor of the plaintiff, judgment to be entered for him; if in favour of the defendant, judgment to be entered as in case of non-suit, &c.

The counsel for the lessor of the plaintiff, made the following points: (1) That by the will of Peter Fretwell, an estate tail passed to Jonathan Wright and Elizabeth his wife. (2) That that estate was not afterwards barred by the operation of the acts of New Jersey, passed in the years 1784 and 1786.[2] Patt. Laws, 54, 78. The conveyances stated in the case, passed only an estate for life. The release of Fretwell Wright was void for want of parties. (3) That the lessor of the plaintiff is not barred by the act of limitations.

1. In support of the first point, were cited Cowp. 410, 234; 3 Leon. 5; Plow. 541; 2 Ld. Raym. 1146; Cowp. 841; 5 Term R. 337.

2. To prove that the estate tail was not discontinued, was cited Co. Litt. § 613. And it was contended that the case was not within the operation of the acts referred to; as the tenant in tail was not in possession of the premises in dispute, at the time those acts passed.

3. The act of assembly passed in 1799

---

[2] The act of 1784 enacts: "That all land or other real estate which hath heretofore been devised in tail of any kind, and hath, agreeably to such devise or intail, passed through one descent since the death of the testator, and is now in the second, or more remote descent from the testator; all such land or other real estate shall be deemed, taken, and adjudged to be the proper estate in fee simple of the present possessor, provided the testator under whom the same is held, had an absolute estate in the same; and also provided the person in possession holdeth the same in the line of descent mentioned and directed in and by such devise in tail; and all devisees heretofore made in tail as aforesaid, which have not already passed through one descent since the death of the testator; and also all such devises which shall hereafter be made in tail of any kind, shall be deemed, taken and adjudged to vest in, and entitle the person to whom the same may be descended, agreeably to the devise or intailment, after the decease of the first devisee, to all the estate in the devised premises, which the testator was entitled to, and might or could have devised; and that no intailment of lands, or other real estate shall continue to intail the same in any case whatever, longer than the life of the person to whom the same hath been, or shall be first given or devised by such intailments."

Supplement to the above act was passed in 1786. It enacts: "That the words 'passed through one descent since the death of the testator, and is now in the second or more remote descent from the testator,' contained in the second section of the above recited act, shall be deemed and construed to mean 'been possessed by the first devise in tail, and is now the property of the next devisee in tail, after the decease of the first devisee, in the line mentioned in the devise in tail under which they may claim;' and that the words 'the line of descent' contained in the above section shall be construed to mean 'the line of intailment;' any matter or clause in the said recited act bearing a different construction, to the contrary notwithstanding."

(Patt. Laws, 353, § 10) gives twenty years from the time the title accrued to bring the ejectment in. The title of the lessor of the plaintiff did not accrue till the death of Fretwell Wright in 1797, and this action was brought in 1816. If the release of Fretwell was good to bar his right, then he could not bring an ejectment in his life time. But it could not affect the estate of his issue, whose right accrued after the death of the tenant in tail. The act of limitations did not begin to run against Fretwell Wright himself, because the possession of Scott was not adverse to his title, as he claimed under this release; and even if the time did begin to run against the said Fretwell, still it did not run on against his issue; but stopped at his death, and a new series commenced in relation to the issue.

The counsel for the defendant insisted as to the first point, that Jonathan & Eliza Wright took a fee simple estate under the devise to them, not only by virtue of the words "or assigns forever," but from other parts of the will in which the testator declares his intention to dispose of all his estate, which, together with other expressions scattered through the will, show that it was his intention to give a fee to his daughter and her husband. There is, besides, a clause in the will, which directs his debts to be paid, thus creating a charge on his real estate, which has always been considered as sufficient to enlarge the estate into a fee. [Williamson v. Kincaid], 4 Dall. [4 U. S.] 21; 1 Term R. 411; 2 Term R. 356, 656, 762; 3 Wils. 298, 302; Ibbetson v. Beckwith, Cas. t. Talb. 157; Cowp. 355; 1 Wils. 333; 3 Burrows, 16, 18; Lofft, 96; 4 East, 495; 5 East, 87; Willes, 140; 1 Burrows, 38; 2 Burrows, 770, 1112; 1 Wash. (Va.) 102. The words "all which estate is given to my daughter as a portion," are sufficient to pass a fee.

Second. To prove that if this be an estate tail, it was discontinued, and the remedy by ejectment was taken away, were cited Co. Litt. 325a; Patt. Laws, 6. A bargain and sale operates like a feoffment, to work a discontinuance. 2 South. [5 N. J. Law] 713; Salk. 619; 3 Burrows, 1703; 1 Atk. 3; Runn. 10, 11; 3 Bl. Comm. 206; Patt. Laws, 135. To show that the former one still continues, Co. Litt. 355; 3 Bl. Comm. 171. The estate tail, if it be one, was barred by the acts of assembly of 1784 and 1786. 2 South. [5 N. J. Law] 713.

Third. The act of limitations began to run against Fretwell Wright in 1742, on the death of Jonathan; and run on after his death against the issue, so that more than sixty years were out before this action was brought; and a possession for that length of time, or even for thirty years, under the circumstances stated in the second section of the act of 1787 (Patt. Laws, 81), all which exist in this case, not only bars the estate of him who has title, but vests an absolute estate in the possessor. 1 Cruise, Fines, 255;

2 Cruise, Fines, 563; Sugd. 267; Shep. Touch. 21, 27, 29, 31; 6 Mass. 328; Wheat. Dig. 233. To prove the release a valid deed, 2 Com. Dig. 170; Co. Litt. 3.

Ewing & Wall, for lessor of plaintiff.
Griffith & L. H. Stockton, for defendant.

WASHINGTON, Circuit Justice. The following objections have been made to the title of the plaintiff, and his right of recovery: (1) That the will of Peter Fretwell passed to Jonathan and Eliza Wright a fee simple estate. If so, the lessor of the plaintiff, who claims as the eldest son of Peter F. Wright, can have no title to the lands in question, which were sold and conveyed by Jonathan Wright his grandfather. (2) But if the estate was a fee tail, then it is objected, that the estate tail was converted into an estate in fee simple by force of two acts of assembly of this state, passed in the years 1784 and 1786, which operated to defeat the estate of the issue in tail. (3) That the plaintiff is barred by force of the act of limitations.

In construing the above recited clause of Peter Fretwell's will, the court will take care not to forget the maxim equally contended for by the counsel on both sides, and which all the cases upon the subject inculcate, that the intention of the testator apparent in the will, is to govern the construction, if such intention be not inconsistent with the established principles of law. We think there is no difficulty in discovering the intention of this testator, and it is quite clear to us that this intention entirely harmonizes with the rules of law. Can it admit of a doubt that the testator intended, in the first instance, to give to his daughter and to his son-in-law, a joint estate in fee tail, excluding for a moment, the words "or assigns for ever?" The words are "to his well beloved daughter, and to her husband J. W. and their heirs begotten of their bodies." The most unlettered man, however ignorant he may be of the difference between a fee simple and a fee tail, knows that the heirs of the body of the devisee, cannot. include general heirs, who are not of his body. Again, can it be doubted that the testator intended, in the event of the death of his daughter, or of her husband, without issue of their bodies, to give the estate to the heirs of the body of the survivor of them? The words for this purpose are, "or for want of such heirs or assigns, then to the heirs begotten by or of either of them, and to their assigns for ever." The expressions "heirs begotten by or of either of them" have precisely the same meaning here, that they have in the devise of the particular estate. But the word "assigns," used in the first, and in the latter part of the clause, might well be construed differently, for the purpose of effectuating the intention of the testator; and that for the following reason. If they are construed in the first part to give a fee simple to the husband and wife, in violation of the obvious intention to give only a fee tail,

the rule of law would not permit the equally evident intent, in favour of those in remainder, to take effect; because it would then amount to a limitation over, after a fee simple, dependent upon an indefinite dying without issue; which the policy of the law will not tolerate, even in wills, the favoured instruments of courts of justice. But the same reason does not apply to prevent the enlargement of the estate in remainder, by force of the same expression; because if the testator meant, in both cases, to give a fee simple, -yet as he still more clearly intended to limit a remainder upon the first estate in the event of a dying without issue; such intention might be gratified by construing "assigns" where they are last used, so as to enlarge the estate into a fee simple, and yet to give a different construction to the same expression in the first part of the clause. These observations are made, not with a view to decide what estate passed to the remainder-man, as that question is not involved in this cause; but are merely intended to show, that because the word "assigns" might have the effect of converting the estate in remainder into a fee simple, without violating the intention of the testator, or the rules of law, it does not follow that it should be so construed in the devise of the particular estate, when by doing so, it would defeat the manifest intention of the testator, by bringing it into collision with the rules of law. What the testator meant by the use of the words "or assigns forever," in the devise of the particular estate, it is not easy for us to say. Possibly he might have meant to apply them exclusively to the personal estate, reddendo singula singulis; which, he may have known, could not be intailed. Or he may have used them, as they are used in deeds, when superadded to heirs, without any meaning or operation whatever. Be this as it may, they cannot admit of the construction contended for by the defendant's counsel, without defeating the manifest wishes of the testator, which is a sufficient reason for rejecting it.

Many cases were read by the defendant's counsel to show, that certain expressions in one part of a will, may be resorted to, to enlarge the particular estate given in another part; such as charging it with payment of debts, the use of the word "estate," and the like. But it will be found, upon an examination of those cases, that they apply to devises of mere freehold estates. There is not one of them which bears upon an estate of inheritance in fee tail, devised by appropriate words, and especially where an estate is limited over upon a general dying without issue. We are therefore of opinion that an estate tail passed to Jonathan Wright, and to his wife, in joint tenancy.

The next question is, whether the lessor of the plaintiff is prevented from recovering in this action, on account, either of defect of title, or want of remedy? These are the two objections urged by the defendant's counsel under the second and third heads of their argument, and which we shall combine, for reasons

which will be perceived when the objections are examined.

The plaintiff's counsel have contended that the estate tail created by the will of Peter Fretwell was not affected by the act of 1784 (Patt. Laws, 53) and the explanatory act of 1786 (Patt. Laws, 78), because Fretwell Wright, the first in descent, was not in the year 1784 in possession of the premises in controversy; that consequently he continued tenant in tail when he died; from which time, and not before, the right of the lessor of the plaintiff, his issue in tail, accrued; that the deed of Jonathan Wright to Henry Scott, and that of his son Jonathan to the same person in 1754, neither nor both of them, discontinued the estate tail, or passed an estate that could endure longer than the life of Jonathan, the first tenant in tail; or, that at most, it was a base fee; and finally that the instrument called a release, executed by Fretwell, dated in 1743, could not affect the right either of himself, or of his issue in tail, not only for the reasons assigned in respect to his father's deed, but because there was no second party to it; but even if it operated as a deed of bargain and sale, that still it could only affect the estate of the bargainor, and not that of his issue in tail, whose right did not accrue before the year 1797, within twenty years from which period, this action was commenced. It is further insisted on the same side, that since Scott held under the above deeds, he held under the grantors, and not adversely to Fretwell Wright; for which reason it is argued that the act of limitations did not begin to run against the lessor of the plaintiff till after his death; and again, that even if the act of limitations had commenced its operation against Fretwell Wright, still his heir in tail could not be affected by it, because if his title could not be defeated or impaired by his acts, neither could it be by his laches.

· The court cannot agree with the counsel in many of the above propositions, and altogether dissent from the conclusions drawn from them. If the release, as it is called, by Fretwell Wright. were out of the case, there could be very little doubt as to the operation of the act of limitations. We will examine the case, then, first, as if this instrument had not been executed; and second, as it may be affected by it.

1. Before we proceed further in the investigation of these questions, it will be proper to attend to the language of the acts of limitations. and particularly to those which passed on the 5th of June, 1787 (Patt. Laws, 81), the first section of which enacts "that sixty years actual possession of any lands, &c., uninterruptedly continued by occupancy, descent, conveyance, or otherwise, in whatever way or manner such possession might have commenced, or have been continued, shall vest a full and complete right and title in every actual possessor or occupier of such lands. and shall be a good and sufficient bar to all claims that may be made, or actions commenced by any person or persons whatsoever for the recovery of any such lands," &c. The second section enacts "that thirty years actual possession of any lands, &c., uninterruptedly continued as aforesaid, wherever such possession commenced, or is founded upon a proprietary right, &c., or wherever it was obtained by a fair bona fide purchase of such lands of any person whatever in possession, and supposed to have a legal right and title thereto, or of the agent, &c. shall be a good and sufficient bar to all prior locations, rights, titles, conveyances or claims whatever, not followed by actual possession as aforesaid, and shall vest an absolute right and title in the actual possessor and occupier of all such lands," &c. The first proviso in this law saves the rights of a person under the usual disabilities existing at the time the said right or title first descended or accrued, if he shall commence his action within five years after the disability removed. The second proviso is in the following words, "that any citizen of this, or any other of the United States, and his or their heirs, having right or title to any lands, &c. within this state, may, notwithstanding the aforesaid times are expired, commence his or their action for such lands, &c. at any time within five years next after the passing of this act, and not afterwards." The tenth section of the act of the 7th of February, 1799 (Patt. Laws, 352), enacts "that from and after the 1st of January, 1803, every real, possessory, ancestral, mixed, or other action, for any lands, shall be brought or instituted within twenty years next after the right or title thereto, or cause of such action shall accrue, and not after." It may not be amiss to observe upon the second section of the first act, that the case shows that Henry Scott obtained possession of the land by a fair bona fide purchase from persons in possession, and supposed to have a legal right and title thereto. There can be no doubt but that the act of 1787 operates retrospectively as well as prospectively, with this difference, that where the sixty or the thirty years had entirely run out, at the time of the passage of the law, citizens of this, or any other state of the United States, claiming title to the land, were indulged with an additional five years within which to commence this action. But if the term was running when the act was passed, or began afterwards to run; in either case, the lapse of the time stated in the act constituted a complete bar, unless the plaintiff could save himself, by showing that he had been under some one of the enumerated disabilities. It will readily be admitted that the possession under this law must be adverse, so far at least, as that the possession must not be held and continued under the person claiming title; and therefore, a lessee for one hundred years, which was the case put by the plaintiff's counsel, could claim no benefit under the act, though he should re-

tain the possession during all that time, inasmuch as such possession would be the possession of his lessor. How far a possession for sixty or thirty years, under a conveyance from a tenant in tail, believed to be such, would operate to bar the issue after the death of the grantor, is a question which does not arise under this head of the inquiry, and therefore need not be mooted. For the case states, that upon the death of Jonathan Wright, in 1742, Henry Scott entered upon the 225 acres conveyed to him by Jonathan Wright in 1741, and that the two sons of the said Jonathan, Ebenezer and Jonathan, entered upon the 700 acres devised to them by their father, (part of which, as well as the 225 acres, are the premises in dispute) and that in 1754, the said Jonathan conveyed the 125 acres to the said Scott. Can it then admit of a doubt, that Scott and the two sons of Jonathan Wright, claiming under his will, entered under titles opposed to that of Fretwell Wright, and consequently adverse to his title? Scott claimed, and was entitled to a base fee, by virtue of the conveyance of Jonathan Wright the elder, defeasible by Fretwell Wright, the issue in tail; and as for the two sons, they had no title whatever. But the possession of those persons, whether with or without title, was in hostility to that of Fretwell Wright, which he claimed, not under his father, but under Peter Fretwell, the donor. From the year 1742 then, to a period exceeding even sixty years, there was, in the words of the first section of the act, an actual possession, uninterruptedly continued by occupancy or otherwise; and this, the act declares, shall not only bar all claims and actions commenced for the recovery of the land, but shall vest a complete title in the possessor. It is to be remarked that this possession is unaffected by either of the provisions in the act, so far as we are informed by the case before us.

But it is contended by the plaintiff's counsel, that the lessor of the plaintiff is not within the operation of the above act, because he claims paramount to the title of Fretwell Wright, and that he cannot be barred, unless the title had run against him after his right commenced, or accrued in 1797, upon the death of Fretwell Wright. This doctrine is altogether untenable. It is opposed as well by the words, as by the obvious meaning of the act. It has been already shown, that the right of Fretwell Wright accrued in 1742, and consequently, that the time then began to run; and it is a clear principle of law, that in such a case it continues to run on, as well against the issue in tail, as against the tenant in tail, against whom it commenced its operation. The language of the first section of the act is general, as to all estates without exception; "in whatever way or manner such possession might have commenced, or have been continued." The act then applies as well to

the claim of a tenant in tail, as to any other title. Yet the argument we are examining, if sound, would substantially exclude from its operation a title gained by length of possession, when opposed by the claim of a tenant in tail; which, particularly after the act of 1784 respecting intails, would be a construction altogether inadmissible. For if the length of time, during which the tenant in tail is bound to bring his action, does not run on so as to affect his issue when he becomes entitled to the estate, then he, and his issue in succession ad infinitum, would be entitled to the benefit of the same length of time to make his claim, after the death of his ancestor; which would in effect do away the operation of the act altogether, as to estates tail. Supposing then the release of Fretwell Wright to be out of the case, we are of opinion that the title of the lessor of the plaintiff is barred by the act of limitations.

2. Taking the case as affected by the release, it is contended that the acts of 1784 and 1786, did not enlarge the estate of Fretwell Wright or of his alienee, but that he died tenant in tail of this estate, and having estopped himself by his release to claim or to sue for the same in her life time, the act of limitations did not begin to run until 1797, when, and not before, the title of the issue of Fretwell Wright accrued, before which time, the possession obtained by Scott under the release was not adverse. We have no doubt but that the effect of the acts of 1784 and 1786, was to unfetter estates tail from the restraints of the statute de donis, whether the tenant in tail was in possession when the act of 1784 passed, or whether the estate then existed as a base fee in possession of his alienee. Den v. Robinson, 2 South. [5 N. J. Law] 793, seems completely to have decided this point, and we think rightly. These acts then being clearly intended to defeat the title of the issue in tail, or in other words, to dock the intail in a case like the present, they operated like a common recovery to enlarge the estate of the alienee into a fee simple. Now we hold it to be perfectly indifferent, whether the plaintiff's or defendant's counsel is right, as to the validity of the release, so called, of Fretwell Wright. If it be valid then, by force of the above acts, it passed to Henry Scott a fee simple estate in the premises, and the lessor of the plaintiff can have no title as the heir of Fretwell Wright the grantor. If it was void, then it has been already shown that the plaintiff is barred by the act of limitations, which began to run upon the death of Jonathan Wright, in 1742.

The case in short stands thus: Upon the death of Jonathan Wright, the right to this estate vested in his eldest son Fretwell Wright, as issue in tail, notwithstanding his father's conveyance to Scott, and the devise in his will to Jonathan and Ebenezer; and Fretwell Wright might then have commen-

ced his action. If his title was unaffected by his release, and also by the acts of 1784 and 1786, then the act of limitations began to run in 1742, and an adverse possession of more than sixty years, previous to the bringing of this action, had run out against the lessor of the plaintiff. If the release was a valid instrument, and the acts of 1784 and 1786 unfettered the estate tail, then the title of the issue in tail of Fretwell Wright was defeated; the estate of the grantee was enlarged into an estate in fee simple; and the heir at law of Fretwell Wright, who must claim under the grantor, and cannot claim paramount to him from the donor, can have no title against the grant. So that take the case under any and every aspect, the lessor of the plaintiff cannot recover.

The view which we have taken of this case, renders it unnecessary to notice many of the arguments at the bar which were much pressed upon us. Judgment for the defendant in each case.